# FRANK SMITH v. P. A. ATHERN.

FINDINGS UNSUPPORTED BY EVIDENCE.—Where certain findings are unsupported by any evidence, as contained in the settled statement on a motion for new trial on the ground that said findings are against the evidence: *held*, that such findings should be set aside.

IDEM—PRESUMPTION THAT STATEMENT CONTAINS ALL THE EVIDENCE.—In such case, even if the statement failed to show affirmatively that it contained all the evidence pertinent to the motion, yet that it does so contain it will be presumed.

SETTLING STATEMENT—DIMINUTION OF RECORD.—Where material facts to the prevailing party are admitted on the trial, and a motion for new trial is made on the ground of the insufficiency of the evidence to sustain the verdict or other decision, it is the duty of the respondent to see that they are included in the statement on said motion; or, if they form part of the records of the case, then to have them supplied, upon suggestion, in this Court, of a diminution of record.

VOID LOCATION OF SCHOOL WARRANTS.—The location of a State school land warrant on unsurveyed public land is void.

CONFLICTING PATENTS FROM THE UNITED STATES AND THIS STATE.—At common law, and under our mode of procedure, in case of conflicting patents to land from one paramount source, the Court, in actions of ejectment, will look behind the patents and ascertain which party had the prior equity; and, when ascertained, it will attach itself to the legal title, which, by relation, takes effect at the time the equity accrued; and thus a junior patent founded on a prior equity will prevail over an elder patent founded on a junior equity.

IDEM.—In 1855, the congressional township embracing the land in controversy was surveyed by the United States; on the 7th day of March, 1856, one Vance filed application in the proper United States Land Office to locate certain California school land warrants on the land in controversy, and on the 10th of the same month the Register of said Land Office approved the proffered location as a part of the land granted by the United States to this State under the Act of Congress approved April 4th, 1841, and issued the proper certificate thereof to Vance, who assigned the same to defendant. Thereafter, on the 8th of January, 1862, the State issued to defendant, as the assignee of Vance, her patent to the land. The plaintiff filed in the proper United States Land Office his declaratory statement for a pre-emption of said land, April 16th, 1856, and he received a United States patent thereto, as a pre-emptor, in November, 1863 : *held*, first— that the titles conveyed by said conflicting patents are both derived from the United States as their paramount source—the latter to plaintiff from the United States direct, and the former to defendant from the United States, through the legislative grant of lands to this State by said Act of April 4th, 1841, the selection of said land by this State in a lawful manner, and by her patent to the defendant ; second—that the equity on which defendant's title is founded dates back to March 10th, 1856, when said Register approved the location of said school land warrants, while the equity on which plaintiff's title rests dates back only to April 16th, 1856, when his said declaratory statement for pre-emption was filed ;—third, that upon this state of facts the defendant's title, under said State patent, should prevail over plaintiff's title founded on said United States patent, as being founded on the prior and superior equity, and because it is the older title.

IDEM.—The only mode in which the plaintiff can overcome the defendant's older title, coupled with his said equity, is by showing that he has a better equity arising from his occupation and settlement of the land prior to March 10th, 1856, followed up by proper proceedings to perfect his pre-emption thereof, and that these proceedings have resulted in his said patent. (*Megerle* v. *Ashe*, 33 Cal. 74, is affirmed.)

APPEAL from the District Court, Fifth Judicial District, San Joaquin County.

This was an action to recover the possession of one quarter section of land in San Joaquin County.

The other facts are stated in the opinion of the Court.

*Geo. Cadwalader*, for appellant, argued that the findings of fact, which are objected to by appellant as contrary to the evidence, should be disregarded; and cited *Hidden* v. *Jordan*, 28 Cal. 311. That upon the remaining facts found by the Court below, appellant was entitled to judgment; and cited *Megerle* v. *Ashe*, 33 Cal. 74.

*Geo. W. Tyler*, for respondent, argued that the objections made by appellant to the findings, on the ground that they are contrary to the evidence, should be disregarded, because he did not except to them in the Court below and move that they be corrected; and cited *James* v. *Williams*, 31 Cal. 211. That the fact that respondent held a patent from the United States, issued to him as a pre-emptor, is in itself proof presumptive that he was a qualified pre-emptor under the laws of the United States, and that he was the first settler upon the land, and had performed all the acts necessary to entitle him to the land as a pre-emptor. This presumption is nowhere attempted to be rebutted by defendant, and the burden was upon him; and cited *Waterman* v. *Smith*, 13 Cal. 419; 13 Cal. 487: 14 Cal. 469; 15 Cal. 366; *Galt* v. *Galaway*, 4 Pet. 342; *Bagnell* v. *Broderick*, 13 Pet. 446.


By the Court, CROCKETT, J. :

This is an action of ejectment, in which the plaintiff claims under a patent from the United States, founded on a pre-emption certificate; and the defendant under a patent from the State of California, founded on the location of a school land warrant. The complaint is in the usual form, and the answer not only denies title in the plaintiff, but sets up title in the defendant, under the location of the school land warrant, and the patent issued by the State in pursuance thereof.

On the trial the plaintiff put in evidence his patent from the United States; and the possession of the defendant and the value of the rents being admitted, the plaintiff rested. The defendant then offered to prove that his grantor, in October, 1852—in accordance with the laws of this State and of the United States—located a school land warrant on the premises in controversy; and, the location having been assigned to the defendant, that the State of California issued a patent to him in January, 1862.

This proof was objected to by the plaintiff, and ruled out by the Court on the ground that the location was invalid

because it was anterior to the survey of the land by the United States, to which ruling the defendant excepted.    The defendant then put in evidence the plat of survey by the United States of the township embracing the land in dispute, and also the school land warrant, and the location thereof in October, 1852, together with an assignment of it to one Vance, who, on the 7th of March, 1856, filed in the proper United States Land Office his application to locate the warrant on the land in dispute, specifying it by the proper subdivisons, as shown on the survey; and on the 10th of March, 1856, the United States Register issued his certificate approving the location, after which Vance assigned the certificate to defendant, to whom a patent was issued by the State on the 8th of January, 1862.

The defendant then proved that the plaintiff filed his declaratory statement for a pre-emption in the United States Land Office on the 16th of April, 1856.    The settled statement on motion for new trial asserts that this was all the evidence introduced in the case.

The case was tried without a jury, and in due time the Court filed its findings, to the effect: 1st—That the plaintiff settled upon the land in contest prior to its survey by the United States, whilst it was vacant and unoccupied, with the intention to pre-empt it at the proper time, and has resided upon it ever since; 2d—That the land was subsequently surveyed by the United States during the Summer of 1855, and the plat of survey was duly filed in the proper Land Office; 3d—That after such filing, the Register and Receiver gave notice that all persons claiming pre-emptions on the land should file their notices of pre-emption on or before the 15th of May, 1856, and that the plaintiff duly filed his notice within the proper time, to wit: on the 16th of April, 1856; 4th—That before filing his notice the plaintiff had erected his dwelling house and other improvements on the land, and had cultivated portions of it; 5th—That after said notice was filed a contest was had between the plaintiff and defendant before the Register and Receiver, as to the plaintiff's right of

pre-emption, the plaintiff claiming the land as a pre-emptor, and the defendant under the laws of the State of California; that on appeal to the Secretary of the Interior, it was finally decided that the plaintiff was entitled to the pre-emption, both parties being represented by counsel during the contest; that in October, 1862, the plaintiff paid for the land, and in November, 1863, obtained his patent; 6th— That after the decision by the Secretary of the Interior the defendant procured a patent for the same land from this State; 7th—That defendant has never resided upon the land, but has occupied and cultivated it from a period anterior to October, 1862, and had placed some improvements on it, the value of the rents being one hundred dollars per annum.

As a conclusion of law, the Court ordered judgment for the plaintiff, and the defendant moved for a new trial, designating as grounds the refusal of the Court to allow him to prove the location of the warrant on unsurveyed lands, and that the findings of fact " are against the evidence " in this, to wit: that the evidence showed that the township plat was filed December, 1855; that there was no evidence that notice to pre-emptors was given, as stated, nor any evidence as to when plaintiff settled on the land, nor that he was a pre-emptioner, except that he filed a declaratory statement on the 16th of April, 1856; nor that there had been a contest between plaintiff and defendant, as stated; nor that plaintiff ever had possession; and that the Court erred in holding the plaintiff's title to be superior to the defendant's, and in not rendering judgment for defendant.

The motion for new trial being denied, the defendant has appealed.

We have been thus particular in stating the history of the case, in order that the points arising on the appeal may be clearly comprehended.

The first point we shall consider is whether the findings objected to by the defendant are unsupported by the evidence. The well settled practice of this Court is not to disturb the findings when the evidence is conflicting, but when wholly

unsupported by any evidence it is our duty to set them aside. We have looked in vain in this record for any evidence whatever to support the findings specified by the defendant; and as the settled statement purports, in express terms, to set forth all the evidence given on the trial, we are not at liberty to presume that there was any other. Even without this statement we should hold, under the settled practice of this Court, that the statement on motion for new trial contained all the evidence pertinent to the motion. (*Hidden* v. *Jordan*, 28 Cal. 311.) The counsel for respondent, in his brief, claims that these facts were all admitted on the trial, and so entered in the minutes of the Court, and ought to have been set forth in the record before us. If so, it was his duty to see that they were included in the statement; or, if they formed a part of the records of the case, he should at the proper time have suggested a diminution of the record, and thus have had its omissions supplied. We must, therefore, disregard all suggestions that there were other facts proven than those which appear in the transcript, and hold the findings to be unsupported by the evidence.

But, if these findings were stricken out, would it appear that the judgment was erroneous? The plaintiff produces a patent from the United States, and the defendant admits the possession of the premises. This makes a *prima facie* case for the plaintiff, which rendered it incumbent on the defendant to overcome it. He seeks to accomplish this by the production of an older patent to himself from the State of California, founded on the location of a school land warrant.

In cases of conflicting patents from a paramount source of title, it is well settled that, even at common law, in actions of ejectment, the Court will look behind the patents and ascertain which party had the prior equity. When this is ascertained, the equity will attach itself to the legal title, which will take effect by relation at the time when the equity accrued. Thus it often happens that a junior patent, founded on a prior equity, is held, even in a Court of law, to prevail

over an elder patent founded on a junior equity. (*Ross* v. *Barland*, 1 Pet, 655; *Bagnell* v. *Broderick*, 13 Pet. 436.)

But in this State purely equitable defenses are allowed in actions of ejectment; and in this case the answer sets up not only the title derived under the patent from the State, but traces it back to its inception in the school land warrant, in order to establish a prior equity. We must, therefore, inquire whether the defendant has established such an equity as will overcome the plaintiff's *prima facie* case founded on his patent.

There can be no doubt that the original location, in 1852, of the warrant on unsurveyed lands was void. Public lands were not liable to such location, until after they had been surveyed by the United States. (*Terry* v. *Megerle*, 24 Cal. 609; *Megerle* v. *Ashe*, 27 Cal. 322; *Grogan* v. *Knight*, 27 Cal. 520.)

Up to the period when Vance applied to the United States Register to locate the school land warrant, he had acquired no equities in the land, the proceedings prior to that time being void. But it appears that the land was surveyed by the United States in 1855, and on the 7th of March, 1856, Vance filed his warrant in the proper United States Land Office, and applied for the location thereof on the land in contest, and on the tenth day of the same month the Register approved the location and issued his certificate therefor in proper form.

Thereupon the State issued its patent to the defendant as assignee of Vance, on the 8th of January, 1862. The equity of the defendant, therefore, attached on the 10th of March, 1856, and culminated in a legal title under the patent in January, 1862. These proceedings had the effect to vest in the defendant a complete legal and equitable title, unless the plaintiff, prior to the 10th of March, 1856, had acquired an equity in the land, which afterward ripened into a legal title under his patent issued in November, 1863.

The plaintiff has failed to establish such an equity unless it is to be presumed as a matter of law from his patent alone,

unsupported by proof of the preliminary acts on which the patent is alleged to be founded. The findings which were excepted to as being unsupported by proof covered some of these material facts; but as these findings must be set aside, the plaintiff can rely only on his patent to support the judgment. If it be conceded that a patent founded on a pre-emption claim raises a presumption that all the necessary preliminary acts were preformed and that the grantee possessed the necessary qualifications to become a pre-emptor, it evidently can raise no presumption as to the date at which the grantee's rights first attached to the land. In a contest founded on a priority of equities, dates become in every sense material. To overcome the defendant's equity, which we have seen commenced on the 10th of March, 1856, it was incumbent on the plaintiff to show by proof that, prior to that time, his equity attached by reason of his prior settlement upon and occupation of the land under such circumstances as entitled him to pre-empt it, and that he did, in fact, afterwards take the necessary steps required by law to make his pre-emption effectual. He has failed to make such proof, and his patent cannot cure the omission.

Counsel for the respondent insist that to require such proof in a contest under conflicting patents, is to deny any conclusive effect to a patent, and, virtually, to destroy its effect as a muniment of title. But if the rule were otherwise, the plaintiff in this case would be wholly without a remedy; for it has become the well established doctrine of this Court, that the Act of Congress of April 4th, 1841, operated as a legislative grant to this State of five hundred thousand acres of land, to be selected by the State, after the lands should be surveyed by the United States; that the State may lawfully make such selection by means of the school land warrants issued under the Act of May 3d, 1852; that upon the location of a warrant on a particular parcel of surveyed public land, and the approval of such location by the proper authorities of the United States, the selection, thus

65

made, operates as a transfer of the legal title to the State, and the State may, thereupon, transfer such legal title, by patent, to the holder of the warrant.

The defendant in this case claims under such a patent, which is older than the plaintiff's patent, and the only grounds on which the plaintiff can overcome the defendant's older legal title, coupled with his equity, is by showing that the plaintiff has a better equity, arising from his prior occupation and settlement, followed up by proper proceedings, to perfect his pre-emption, and that these proceedings have resulted in a patent. If he were forbidden to do this, he must fail in his action, for the obvious reason that the defendant holds the oldest legal title from the paramount source of title, to-wit: the United States, derived through the legislative grant to this State, the selection of the land by the State, in a lawful manner, and the patent to the defendant. We are entirely satisfied with the decisions in *Megerle* v. *Ashe,* 33 Cal. 74, and here re-affirm the principles they decided.

It is unnecessary to consider the other points suggested in the briefs, as the views expressed above dispose of the case.

Judgment and order denying a new trial reversed, and cause remanded for a new trial.